865 F.2d 1259
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Yvonne M. THOMPSON, Plaintiff-Appellant,
v.
STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, Defendant-Appellee.
 No. 88-3528.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 3, 1988.
Decided: Dec. 16, 1988.
 
 Frank Furst Daily, III (J. Paul Mullen, Lord & Whip, on brief), for appellant.
 James Linwood Quarles, III (Hale & Dorr; Stanley Mazaroff, Venable, Baetjer & Howard, on brief), for appellee.
 Before WIDENER, ERVIN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Yvonne Thompson appeals the district court order granting summary judgment in favor of State Mutual. The complaint alleged wrongful discharge, breach of employment contract, breach of a separate and distinct contract, fraud, negligent misrepresentation, and intentional infliction of emotional distress. Finding no error, we affirm.
 
 
 2
 Miss Thompson was discharged from employment from State Mutual's Baltimore, Maryland office. Her claim, which was originally filed in the Circuit Court for Baltimore City and removed to the district court, alleges that the discharge was predicated by her disclosure of illegal business practices in her office.
 
 
 3
 Some three years after graduating from high school in 1980, Miss Thompson, in 1983, was employed by State Mutual in its Baltimore office. State Mutual's main office is in Massachusetts. While there, she apparently was a competent and diligent employee, and by 1986, when the incidents which are the subject of this litigation took place, her pay was about double that at which she had started.
 
 
 4
 In the course of her duties, Miss Thompson became aware of certain practices engaged in by some people in the Baltimore office, in which an unlicensed employee would solicit the sale of mutual funds, with a licensed employee signing the more formal papers; a full-time employee being employed full-time by another company; and the sharing of commissions by one employee in return for a promotion. Such practices were in violation of company policy and perhaps, as well, of various regulatory statutes and regulations. She was disturbed upon learning this information and related it by telephone to her boyfriend, an employee of the company at its home office in Massachusetts. The boyfriend then related the information to one Leichter, an official of the company at its home office. Shortly thereafter, Miss Thompson called Leichter and related the same to him. Leichter told Miss Thompson that the company might not be able to do anything about the information she had given to him and yet maintain the confidentiality of the source of his information.
 
 
 5
 Shortly after Leichter's receipt of the information, the company started an investigation, and, upon hearing of it, Miss Thompson first called in sick and then engaged Leichter and other company officials in other conversations, expressing concern about her identity being divulged as the informat in the case, at which time she was asked to return to work but refused, whereupon she received assurances from Leichter that she would be placed on leave of absence with pay and would be protected. Leichter spoke of her status as under the witness protection program. Leichter did not promise, however, and Miss Thompson does not claim, that any such program would last indefinitely. The investigation did not result in the discharge of the employees Miss Thompson had complained about, which included one Mathis, her superior, and who was in charge of the Baltimore office.
 
 
 6
 Following Leichter's agreement, one Pierce, the company attorney conducting the investigation, secured company interviews for Miss Thompson in Massachusetts, where the company was hiring, but she was unable to find a position there which was mutually satisfactory to her and to the company. She interviewed elsewhere, however, and was hired by Paul Revere Insurance Company, doing about the same work she had done and at an increase in pay. In the meantime, she had been placed on leave of absence with pay by the company and as well had been awarded additional severance pay. Her job at Paul Revere commenced one week after the severance pay ended.
 
 
 7
 Not all of the district court's holdings in awarding summary judgment are appealed from. Among those holdings which are appealed from are its holdings that Miss Thompson did not demonstrate that the defendant made statements to her with intent to defraud; that the tort of negligent misrepresentation was not proven because Miss Thompson did not establish facts which indicated that she relied on facts negligently asserted by the defendant; and that the tort of intentional infliction of emotional distress had not been proven because the circumstances surrounding the discharge of Miss Thompson had not amounted to extreme and outrageous conduct within the meaning of Maryland law. Those holdings are affirmed on the reasoning of the district court as set forth in its opinion.
 
 
 8
 The district court also held that there was no separate contract between Miss Thompson and the defendant in which the defendant agreed to guarantee job security in exchange for her disclosure of possible illegal activity. It reasoned that the gist of her action was that the company would maintain the fact of her informing as confidential information and had not. The district court held that such an agreement was impossible because Miss Thompson had already told her boyfriend of the information and Leichter had told Miss Thompson that the company could not guarantee confidentiality. Those holdings are correct. Miss Thompson argues, however, that it is not contested that when she did not report in for work after learning of the investigation, Leichter told her that she would be protected and that she would be placed on a witness protection program. The district court did not treat this matter in its opinion, and it may be that the reason is that the emphasis in that court may have been on the confidentiality of the communication to Leichter, which does not seem of great consequence in the light of the present record, or it may be that the position taken in the district court was that the promise of Leichter for protection was made prior to the disclosure to him of the information by Miss Thompson. In all events, it is apparent that Leichter's promise to provide Miss Thompson with protection was made after the investigation started and after the disclosure of her identity as a consequence of the investigation, which she knew would happen. The district court properly held that Miss Thompson was an employee at will, so the company owed her no obligation when she did not report for work, and the leave of absence with pay and extra severance pay she received were, so far as this record is concerned, that which the company terms them to be, payments which the company was not contractually obligated to make.
 
 
 9
 The judgment of the district court is accordingly
 
 
 10
 AFFIRMED.